NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

-------------------------------------------------------

ZIVKOVIC, DRAGOMIR & KOVILJKA, :

                                         :     TAX COURT OF NEW JERSEY

      Plaintiffs,                :     DOCKET NO:   002649-2025

                                             :

      v.                            :         Civil Action

                                             :

BOROUGH OF RIDGEFIELD,      :

                                             :

      Defendant.               :

                                             :

> Approved for Publication
> In the New Jersey
> Tax Court Reports

-------------------------------------------------------

Decided: August 6, 2026

Daniel G. Keough for plaintiffs (Ventura, Miesowitz & Keough, P.C., attorneys).

Robert J. Guanci and Jacob B. Kenter (Waters, McPherson, McNeill, P.C., attorneys), and David S. Lafferty for defendant (Huntington Bailey, L.L.P., attorneys).

RAFFETTO, J.T.C.

In this direct appeal to the Tax Court, plaintiffs seek relaxation of the tax payment requirement under N.J.S.A. 54:3-27 in the "interests of justice" after defendant moved to dismiss the above-captioned complaint for failure to pay taxes.[1] Plaintiffs claim the property is grossly over assessed and have produced an appraisal

---

[1] The motion was filed by Waters, McPherson, McNeill, P.C., on behalf of defendant; however, during the course of the proceedings, Huntington Bailey L.L.P. was substituted in as counsel for defendant.






report which opines a fair market value that is significantly less than the assessment.

The court finds, for the reasons set forth below, that it lacks statutory authority to consider plaintiffs' tax payment relief request under N.J.S.A. 54:3-27 given that plaintiffs failed to first make an application to the county board of taxation and instead filed a direct appeal to the Tax Court. Moreover, even if the court were to find that it has such statutory authority, it notes that plaintiffs' arguments would not merit invocation of this extraordinary remedy. Therefore, the court grants the defendant's motion and dismisses plaintiffs' complaint with prejudice.

## I.     Procedural History and Findings of Fact

The facts are not in dispute. Plaintiffs own the property located at 610 Broad Avenue in defendant, Borough of Ridgefield (Ridgefield), also known as Block 2203, Lot 18 on the tax map (the property). The property, which was assessed for $2,726,500 in 2025, is improved with a two-story commercial office building.

On March 13, 2025, plaintiffs filed a complaint directly with the Tax Court pursuant to N.J.S.A. 54:3-21, challenging the 2025 assessment. Ridgefield filed an answer and counterclaim.

Thereafter, Ridgefield filed the within motion seeking to dismiss plaintiffs' complaint for failure to pay taxes and/or municipal charges pursuant to N.J.S.A. 54:3-27. In support of its motion, it submitted a certification from the assistant tax collector stating that the principal amount of $33,411.10 in outstanding taxes, plus

2

interest, was owed as of the date of the motion's filing, representing taxes for the fourth quarter of 2024 and the first and second quarters of 2025.[2] The total amount due at that time, with interest, equated to $34,834.10. Removing the principal sum of taxes due for the second quarter of 2025 ($11,018), the total principal amounts due for the fourth quarter of 2024 and the first quarter of 2025 equated to $22,393, plus interest (collectively referenced as the relevant outstanding taxes).

In opposition to the motion, plaintiff, Dragomir Zivkovic, certified as to the increasing assessments on the property through the years despite his contention that there has been "virtually no change to the property" since 2006, when it was "appraised" for $650,000. He claimed that the market for this type of building, which comprises office space on both floors with relatively low ceiling heights, "is substantially less desirable now than it was in 2006." Mr. Zivkovic stated that the resulting tax increases "drained" their former tenant, who vacated the premises approximately two years ago, and have similarly "drained" him and his wife (presumably meaning financially).[3]

---

[2] For purposes of N.J.S.A. 54:3-27, taxes due after the first quarter of the "current tax year" (meaning the year of the appeal) are irrelevant to a motion to dismiss.

[3] The specific language from paragraph two of Mr. Zivkovic's certification in this regard states as follows: "The resulting tax increases from these assessment increases, have drained my tenant, that vacated roughly 2 years ago due to them, and me and my wife personally."

Prior to the initial return date of the motion, plaintiffs provided an appraisal report (the appraisal report) in which their appraiser opined fair market value conclusions for the property as of October 1, 2022, October 1, 2023, and October 1, 2024. There are tax appeals pending before the Tax Court for tax years 2023, 2024 and 2025. However, the within motion concerns the 2025 tax year only. The appraisal report rendered a value conclusion for the property in the amount of $1,300,000 for 2025 as compared to its assessment for that year of $2,726,500.[4] Thus, the appraiser's opinion of value represented less than one-half of the property's 2025 assessment.

At the initial oral argument conducted on the motion, and in response to the court's inquiry, plaintiffs' counsel conceded that the relevant outstanding taxes had not been paid as of the return date of the motion. Notwithstanding, plaintiffs have asked the court to hear their appeal on its merits, asserting that the tax payment requirement should be relaxed in the "interests of justice." This request is premised upon the 1999 amendments to N.J.S.A. 54:3-27, which were enacted pursuant to L. 1999, c. 208, §5 (eff. Sept. 17, 1999). Plaintiffs base their argument upon the value conclusion derived in the appraisal report for tax year 2025 and their resulting contention that the property is grossly over assessed.

---

[4] The appraiser concluded the property's value at the same $1,300,000 amount for the prior two tax years as well. The assessments for those two years were $2,561,500 (2023) and $2,601,600 (2024). Ridgefield conducts annual reassessments.

4

Prior to rendering a decision on the motion, the court advised the parties that it intended to consider an additional issue that had not been raised in their initial written submissions regarding the motion or during oral argument. That issue is whether the court has statutory authority to grant tax payment relief in the "interests of justice" in an appeal filed directly with the Tax Court, as opposed to one that was first initiated with the county board of taxation and thereafter appealed to the Tax Court, given the specific language of N.J.S.A. 54:3-27.

The court provided the parties with additional time to brief this issue. After supplemental written submissions were received, the court conducted a second oral argument limited solely to this issue on February 13, 2026. At the commencement of the second oral argument, the court questioned plaintiffs' counsel once again as to whether payment of the relevant outstanding taxes had been satisfied as of this later date. Plaintiffs' counsel stated that he was unaware as to the payment status. Ridgefield's counsel advised the court that the relevant outstanding taxes had still not been paid as of the time of the second oral argument.

## II.    Legal Analysis

In the current matter, the facts are not disputed. The relevant outstanding taxes were not paid by plaintiffs by either of the two separate return dates scheduled concerning Ridgefield's motion to dismiss the complaint. The issues are: (1) whether the Tax Court has statutory authority under N.J.S.A. 54:3-27 to relax the

5

tax payment requirement in the "interests of justice," pursuant to the 1999 amendments to that statute, in a direct appeal that was not first initiated before the county board of taxation; and (2) if the court has such statutory authority, whether the specific facts of this case warrant the provision of such relief.

## A. The Tax Payment Requirement

The principle that taxes must be paid when due as a prerequisite to litigating liability for the amount alleged due, also known as the "pay now, litigate later" principle, is well established in New Jersey law.[5]  The tax payment requirement is intended to "insure that the flow of municipal revenues will not be interrupted by the filing of tax appeals" and to prevent financial hardship to municipalities. Dover-Chester Assocs., 419 N.J. Super. at 201 ("The purpose of the tax payment requirement is to protect the municipality's interest in receiving timely payment of taxes to provide the revenue necessary for governmental operations. . . .  When the flow of revenue is interrupted, the burden of an appealing taxpayer's unpaid taxes is shifted to the other taxpayers in the district and reflected in the reserve for

---

[5]  See e.g. New York, S. & W.R. Co. v. Vermeulen, 44 N.J. 491, 501-02 (1965); Jefferson-Halsey Roads Assocs., L.P. v. Parsippany-Troy Hills Twp., 13 N.J. Tax 138, 139 (App. Div. 1993); Schneider v. E. Orange City, 196 N.J. Super. 587, 595-96 (App. Div. 1984); Woodlake Heights Homeowners Ass'n, Inc. v. Middletown Twp., 7 N.J. Tax 364, 366-67 (App. Div. 1984); J.L. Muscarelle, Inc. v. Saddle Brook Twp., 15 N.J. Tax 164, 167 (App. Div. 1994); Dover-Chester Assocs. v. Randolph Twp., 419 N.J. Super. 184, 199-200 (App. Div. 2011).

uncollected taxes.") (citing J.L. Muscarelle, Inc. v. Saddle Brook Twp., 14 N.J. Tax 453, 457 (Tax 1995)).

There are two separate statutes which require payment of municipal property taxes as a condition to appealing a local property tax assessment in New Jersey. The first is N.J.S.A. 54:3-27, which is applicable to appeals filed with the county boards of taxation and to appeals filed directly with the Tax Court pursuant to N.J.S.A. 54:3-21. See Powder Mill I Assocs. v. Hamilton Twp., 190 N.J. Super. 63, 69-70 (App. Div. 1983); Farrell v. Atlantic City, 10 N.J. Tax 336, 342 (Tax 1989). N.J.S.A. 54:3-27 provides, in pertinent part, as follows:

> A taxpayer who shall file an appeal from an assessment against him shall pay to the collector of the taxing district <u>no less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed against him for the current tax year</u> in the manner prescribed in R.S. 54:4-66.

> [N.J.S.A. 54:3-27 (emphasis added).]

The second statute is N.J.S.A. 54:51A-1(b), which is applicable to indirect appeals filed with the Tax Court seeking review of judgments rendered by a county board of taxation. That statute provides, in pertinent part, as follows:

> At the time that a complaint has been filed with the Tax Court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid.

> [N.J.S.A. 54:51A-1(b).]

7

The two key differences between these statutes are the nature of the tax payment requirement and when the taxes must be paid. See Dover-Chester Assocs., 419 N.J. Super. at 189. A taxpayer who files a direct appeal to the Tax Court and thus has not engaged in a prior adjudicatory process before the county board, must pay no less than the total of all taxes and municipal charges due through the first quarter of the current tax year in order to maintain the viability of the appeal. This requirement includes payment of any delinquent taxes owed for prior years. Route 88 Office Assoc. Ltd. v. Brick Twp., 13 N.J. Tax 14, 23 (Tax 1992).

However, N.J.S.A. 54:3-27 does not specify when such payment must be made. Prior case law has held that the tax payment requirement under N.J.S.A. 54:3-27 is not jurisdictional;[6] rather, the taxpayer's obligation to make payment must be "crystallized by the municipality through the filing of an appropriate defensive pleading, a motion to dismiss, or even by the institution of tax foreclosure proceedings." Lecross Assocs. v. City Partners, 168 N.J. Super. 96, 99-100 (App. Div. 1979). As such, payment of the outstanding taxes after the filing of the appeal but before the hearing on a motion to dismiss may defeat the motion. See Powder Mill I Assocs., 190 N.J. Super. at 66; Farrell, 10 N.J. Tax at 342 ("Non-compliance with the provisions of N.J.S.A. 54:3-27 is governed by Lecross, and if taxes are paid

---

[6] See Powder Mill I Assocs., 190 N.J. Super. at 70; Echelon Glen Co-op., Inc. v. Voorhees Twp., 275 N.J. Super. 441, 449 (App. Div. 1994).

8

before a motion to dismiss is heard, the direct appeal will not be dismissed.").

By contrast, a taxpayer who has first appealed to the county board and engaged in an initial adjudicatory process at that level is required by N.J.S.A. 54:51A-1(b) to pay all taxes or any installments thereof then due and payable for the year for which review is sought. However, this obligation must be satisfied "at the time that a complaint has been filed" with the Tax Court. N.J.S.A 54:51A-1(b); Dover-Chester Assocs., 419 N.J. Super. at 189.

In the current matter, it is undisputed that the relevant statute is N.J.S.A. 54:3-27 since plaintiffs filed an appeal directly to the Tax Court pursuant to N.J.S.A. 54:3-21, rather than an indirect appeal to the Court seeking review of a judgment previously rendered by the county board of taxation. As such, this opinion will focus on the tax payment relaxation provisions contained in N.J.S.A. 54:3-27 pursuant to the 1999 amendments to that statute.

## B. The 1999 Amendments

In 1999, the Legislature amended numerous sections of Title 54 of the New Jersey statutes with the enactment of Chapter 208 of the Laws of 1999 (the 1999 amendments). L. 1999, c. 208 (eff. Sept. 17, 1999). Among other things, the 1999 amendments revised both N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) to add a provision to each statute to allow relaxation of the tax payment requirement "as the interests of justice may require." Id. at §§ 5, 13. The amendments were intended to

9

implement a series of recommendations promulgated by the Supreme Court's Committee on the Tax Court (the Supreme Court Committee or the Committee).[7] See Dover-Chester Assocs., 419 N.J. Super. at 189. Importantly, the amendments did not modify the tax payment requirement prescribed by either statute; rather, they provided certain discretion to both the county boards of taxation and the Tax Court to relax the tax payment requirement contained in each statute and fix such terms for payment of the tax "as the interests of justice may require."

In that regard, N.J.S.A. 54:3-27 was amended to incorporate the following language at paragraph five thereof:

> Notwithstanding the foregoing, the county board of taxation may relax the tax payment requirement and fix such terms for payment of the tax as the interests of justice may require. If the county board of taxation refuses to relax the tax payment requirement and that decision is appealed, the Tax Court may hear all issues without remand to the county board of taxation as the interests of justice may require.
>
> [N.J.S.A. 54:3-27 (emphasis added).]

Likewise, N.J.S.A. 54:51A-1(b) was amended to delete certain prior language[8] and to add the following sentence in its place:

---

[7] See Biennial Rep. 1996-1998 at 16 (1998).

[8] The previous language that was removed from N.J.S.A. 54:51A-1(b) as part of the 1999 amendments read as follows: "No interest shall be due and payable by the

Notwithstanding the foregoing, the Tax Court may relax the tax payment requirement and fix such terms of payments <u>as the interests of justice may require</u>.

[N.J.S.A. 54:51A-1(b) (emphasis added).]

The verbiage associated with the 1999 amendments to these statutes is notable. Specifically, when the revisions to each statute are read together it appears that the Legislature only vested the Tax Court with discretion to "hear all issues without remand to the county board of taxation as the interests of justice may require" (N.J.S.A. 54:3-27)[9] and to "relax the tax payment requirement and fix such terms for payment of the tax as the interests of justice may require" (N.J.S.A.

_____

appellant for the period from November 1 of the current tax year to the date of filing the complaint."

[9] Prior to the 1999 amendments, if a taxpayer instituted an action at the county tax board level which was dismissed by the board for failure to pay taxes pursuant to N.J.S.A. 54:3-27 and the taxpayer thereafter paid the taxes and filed a timely appeal to the Tax Court, the only issue reviewable by the Tax Court was the appropriateness of the board's judgment of dismissal with prejudice. <u>See generally</u> <u>Blum Ltd. Partnership v. Bloomfield Twp.</u>, 15 N.J. Tax 409 (Tax 1995), <u>aff'd</u>, 294 N.J. Super. 201 (App. Div. 1996). In <u>Blum</u>, the Tax Court held that to permit the taxpayer to maintain the action before it, notwithstanding its failure to comply with N.J.S.A. 54:3-27, "renders that statute meaningless, and the Legislature will not be presumed to enact useless laws, nor to use meaningless language." 15 N.J. Tax at 412 (citations omitted). And in its further review of that case, the Appellate Division thereafter stated that "[t]here is no statutory intent evident to give a taxpayer two bites at the apple." 294 N.J. Super. at 207. The 1999 amendments modified <u>Blum</u> in that the tax payment requirement is no longer a jurisdictional matter incapable of being relaxed by the Tax Court. <u>See</u> <u>Christian Asset Mgmt. Corp. v. E. Orange City</u>, 19 N.J. Tax 469, 474-75 (Tax 2001).

11

54:51A-1(b)) in indirect appeals that were first initiated before the county board of taxation, but not in cases involving direct appeals to the Tax Court.

The question presented is whether the Legislature intended to vest both the county boards of taxation and the Tax Court with similar authority to relax the tax payment requirement "as the interests of justice may require" in appeals that are initially filed before either governmental entity (to which N.J.S.A. 54:3-27 applies), or whether the Legislature intended to limit the Tax Court's ability to provide such relief only in those cases that were first initiated before the county board of taxation and thereafter appealed to the Tax Court (to which N.J.S.A. 54:51A-1(b) applies).

Since enactment of the 1999 amendments, the only reported cases that have considered a taxpayer's request to relax the tax payment requirement in the "interests of justice" have been of the latter category, that is, indirect appeals to the Tax Court that were first initiated before a county board of taxation.[10] The Tax Court's ability to "relax the tax payment requirement and fix such terms of payments as the interests of justice may require" is clear from the explicit language of the relevant statute. N.J.S.A. 54:51A-1(b). As such, statutory authority was not an issue in those cases and the focus of their determinations concerned whether, based upon the facts

---

[10]   See Christian Asset Mgmt. Corp., 19 N.J. Tax at 472; Wellington Belleville, L.L.C. v. Belleville Twp., 20 N.J. Tax 331, 332 (Tax 2002); Huwang v. Hillside Twp., 21 N.J. Tax 496, 499 (Tax 2004); Dover-Chester Assocs., 419 N.J. Super. at 188.

presented in each matter, relaxation was warranted in the "interests of justice."

However, no reported decision has yet addressed such a request in a direct appeal to the Tax Court, to which N.J.S.A. 54:3-27 is applicable. The issue has only been raised collaterally in passing, but not squarely, in two reported cases.

The first such case was Sun Pipe Line Co. v. W. Deptford Twp., 25 N.J. Tax 466 (Tax 2010), which involved appeals concerning a number of parcels (collectively the subject property) that comprised the Eagle Point oil refinery. There, the taxpayer initiated two challenges concerning various parcels of the subject property before the County Board of Taxation and simultaneously filed two separate challenges concerning other parcels of the subject property directly with the Tax Court for tax year 2010. The County Board affirmed the assessments in the matters filed before it, and the taxpayer filed timely appeals of those judgments to the Tax Court. As such, all four of the appeals involving the subject property for tax year 2010 became pending before the Tax Court, with separate docket numbers.

The taxpayer, rather than the municipality, filed a motion under N.J.S.A. 54:3-27 pertaining to all four appeals seeking a reduction of the local property taxes on all parcels while the appeals were pending "in the interests of justice."[11] The

---

[11] The taxpayer relied solely upon N.J.S.A. 54:3-27 in this regard. The court, however, recognized that this statute applied only to the two direct appeals pending before it, and that N.J.S.A. 54:51A-1(b) was the applicable statute relative to the two

13

taxpayer argued that the purchase price that it had paid for the subject property approximately six years earlier ($111,000,000) was the best indicator of value and that the court should therefore reduce the taxpayer's ongoing tax payment obligation to the amount that would be due if the subject property were assessed at an equalized market value equivalent to the purchase price. Alternatively, the taxpayer requested that the court suspend, commencing with the August 1, 2010 payment, its obligation to pay taxes associated with the assessment that had been placed on the refinery machinery and equipment. Finally, the taxpayer also requested that it be relieved from the obligation to pay interest and penalties associated with the suspended tax payments.

Since no taxes were due concerning any of the parcels that were pending before the court,[12] the taxpayer was essentially seeking prospective relief as against future tax payments that had not yet come due. Moreover, the taxpayer would be absolved of interest and penalties associated with those taxes, if successful.

The court denied the taxpayer's motion. As to the taxpayer's request for a

_____

appeals seeking review of the judgments rendered by the county board of taxation. Sun Pipe Line, 25 N.J. Tax at 472.

[12] At the time that each of the four complaints was filed with the Tax Court, the taxpayer had paid all taxes and municipal charges required pursuant to N.J.S.A. 54:3-27 (for the direct appeals) and N.J.S.A. 54:51A-1(b) (for the indirect appeals). The taxpayer also paid the taxes and municipal charges due on the subject property on May 1, 2010. The motion was filed on June 7, 2010.

reduction of its taxes while the appeals were pending based upon its prior purchase price, Judge DeAlmeida stated that, "[t]he fact that plaintiffs paid $111,000,000 for the subject property six years ago does not, standing alone, prove that the current assessment of the property at an equalized value twice that amount is erroneous, let alone confiscatory." Sun Pipe Line, 25 N.J. Tax at 477.

Importantly, the court reiterated the well-established "pay now, litigate later" principle articulated earlier and the rationale associated with ensuring the flow of revenue to the municipality while an appeal is pending. The court remarked, "[t]his is true regardless of the apparent validity of the taxpayer's claimed entitlement to a reduction in an assessment." Id. at 475 (emphasis added). Judge DeAlmeida declared,

> The court would upend this orderly plan were it to hold that plaintiffs could pay a reduced amount of tax on the subject property because plaintiffs have produced evidence that they ultimately will prevail in these appeals. The rule has always been that the public interest in an uninterrupted and predictable flow of tax revenue to municipalities outweighs a taxpayer's claim to be entitled to a reduction in taxes. Until the taxpayer proves that the assessment on its property is excessive, the taxpayer must pay the full amount of tax due. Overpayments as a result of a successful claim are addressed through refunds by the taxing district as provided by law. Plaintiffs, however, ask that the burden in these appeals be shifted to the municipality in that plaintiffs seek to reduce their tax payment obligations immediately even though they have not proven their claims. If plaintiffs ultimately are not successful in reducing the assessment on the subject property, they presumably would be liable for the unpaid

15

balance of the tax, but free from any interest and penalties. The Legislature and Governor certainly did not envision this approach.

[Ibid. (emphasis added).]

Additionally, the court concluded that nothing in the unambiguous language of N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) vests in the court the authority to grant the prospective relief as requested by the taxpayer. Rather, the court stated that neither of the statutes addresses taxes due after the court's jurisdiction is established, and that "[t]he statutes plainly state the scope of available relief and it is incumbent on this court to apply that plain language." Sun Pipe Line, 25 N.J. Tax at 474 (emphasis added).

As pertinent to the issue herein, the court noted:

> In light of these holdings, the court need not address several legal questions implicated by plaintiffs' motion, including whether N.J.S.A. 54:3-27 allows a taxpayer in a direct appeal to seek tax payment obligation relief from this court without first making an application to the county board of taxation and whether either statute authorizes a reduction in the amount of taxes due on property that is the subject of an appeal, as opposed to limiting the court's authority to setting the terms on which the payment of the full amount of taxes due on the property may be made. The court leaves those questions for another day.

[Id. at 479 (emphasis added).]

The other case in which the Tax Court has addressed, in passing, the tax payment relaxation provision in the context of a direct appeal was Branchburg Hosp.

16

LLC v. Branchburg Twp., 32 N.J. Tax 546 (Tax 2022). There, the taxpayer initially filed a direct appeal to the Tax Court contesting the assessed value of its hotel property for tax year 2021 due to the effects of the COVID-19 pandemic on its business. But shortly thereafter, and prior to the statutory filing deadline, the taxpayer withdrew its direct appeal and instead initiated an appeal with the County Board of Taxation concerning the same property for the same tax year. The municipality moved to dismiss the appeal at that level on three bases: (1) lack of subject matter jurisdiction; (2) failure to respond to the assessor's income and expense request under N.J.S.A. 54:4-34 (Chapter 91); and (3) failure to pay taxes. The County Board dismissed the case under Chapter 91 but did not address the taxpayer's request that the tax payment requirement be relaxed under N.J.S.A. 54:3-27 (arguing an alleged loss of revenues resulting from the pandemic) since the dismissal under Chapter 91 rendered that issue moot.

The taxpayer then appealed the County Board's dismissal to the Tax Court, thus constituting an indirect appeal. The municipality once again moved to dismiss the indirect appeal on the same three bases. Initially, the Tax Court concluded, as did the County Board, that it had subject matter jurisdiction over the case and that the previous judgment issued by the Tax Court dismissing the direct appeal due to the taxpayer's voluntary withdrawal did not bar the taxpayer's subsequent filing of a petition of appeal to the County Board for the same property for the same tax year.

17

Nor, according to the court, did that judgment bar the further appeal of the County Board's decision to the Tax Court.

As to the municipality's motion to dismiss for failure to pay taxes, the taxpayer conceded that the amounts due under N.J.S.A. 54:51A-1(b) had not been paid when the complaint was filed.[13] However, the taxpayer argued that the unprecedented COVID-19 pandemic caused a steep decline in revenues for the 2020 and 2021 tax years and forced the hotel to close. Thus, the taxpayer sought a relaxation of the tax payment requirement under N.J.S.A. 54:51A-1(b) in the "interests of justice." The court was unpersuaded by the taxpayer's argument, concluding that it had failed to provide the court with a sufficient factual basis to support a finding that the tax payment requirement should be relaxed. In so holding, and as relevant to the instant motion, Judge Fiamingo noted:

> The ability of the court to relax the tax payment requirement is applicable only to appeals from decisions of the county boards of taxation. Cf. N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b). . . . The court observes that this restriction is likely the motivation for plaintiff's withdrawal of its initial direct appeal and the subsequent filing of its petition before the County Board.
>
> [Branchburg Hosp., 32 N.J. Tax at 557 n.7 (emphasis added).]

---

[13] The court recognized that the applicable statute was N.J.S.A. 54:51A-1(b), given that the appeal before it resulted from the judgment of dismissal rendered by the County Board of Taxation. Branchburg Hosp., 32 N.J. Tax at 558.

18

As indicated earlier, both of the above noted cases made reference to, but did not decide, the ability of the Tax Court to relax the tax payment requirement in the "interests of justice" in a direct appeal to the Tax Court, for which N.J.S.A. 54:3-27 is applicable. In each case, the court's comments were made in passing only, as the facts presented in each matter did not require a determination on the merits of this issue. By contrast, however, the within case places the question squarely before this court. As such, the "another day" envisioned by Judge DeAlmeida in Sun Pipe Line has arrived, thus presenting an issue of first impression.

In order to resolve the matter, a review of the 1999 amendments to N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) is helpful. Prior to their enaction, the 1999 amendments were part of S. 673 (S. 673 or the bill). S. 673 was introduced on February 23, 1998 and proposed revisions to a number of sections of Title 54 of the New Jersey statutes dealing with taxation.

As to N.J.S.A. 54:3-27, the bill as introduced (at § 5 thereof) recommended incorporating several new provisions, including a new paragraph[14] vesting the county board of taxation (only) with discretion to relax the tax payment requirement and to fix the terms associated with payment in the "interests of justice." The new language as initially proposed read as follows:

> Notwithstanding the foregoing, the county board of taxation may relax the tax payment requirement and fix

---

[14] The new paragraph is now found at paragraph five of N.J.S.A. 54:3-27.

19

> such terms for payment of the tax as the interests of justice may require.
>
> [S. 673, § 5 (Feb. 23, 1998) (emphasis added).]

Importantly, there was no reference to the Tax Court in that provision providing it with the similar ability to relax the tax payment requirement and to fix the terms associated with payment of the tax in matters that are filed directly with it under N.J.S.A. 54:3-21. This omission is notable, as the tax payment requirement prescribed under N.J.S.A. 54:3-27 had been construed by the Appellate Division approximately fifteen years earlier to apply to direct appeals filed with the Tax Court as well as to appeals initiated before the county boards of taxation. Powder Mill I Assocs., 190 N.J. Super. at 69-70.

The Legislature created the Tax Court by statute in 1978. L. 1978, c. 33, § 1 (eff. June 13, 1978). Shortly after establishing the Tax Court, the Legislature in 1979 provided the Court with original jurisdiction to review assessments in excess of a threshold amount of $750,000.[15] There is a presumption that the Legislature is aware of its prior enactments. See Mahwah v. Bergen Cnty. Bd. of Tax'n, 98 N.J. 268, 279 (1985); Jacobs v. N.J. State Highway Auth., 54 N.J. 393, 401 (1969); Brewer v. Porch, 53 N.J. 167, 174 (1969) (recognizing the assumption that "the Legislature is

---

[15] L. 1979, c. 113, § 1 (eff. July 1, 1979). The jurisdictional threshold for direct appeals to the Tax Court has since been raised from $750,000 to $1,000,000 through enactment of L. 2009, c. 251, § 1 (eff. Jan. 16, 2010).

thoroughly conversant with its own legislation"). See also Hunterdon Med. Ctr. v. Readington Twp., 22 N.J. Tax 302, 338 (Tax 2005). Based upon these enactments, the Legislature was aware of the Tax Court's existence and of its original jurisdiction to review appeals concerning properties assessed in excess of the threshold amount when the amendments incorporated through S. 673 were being considered. Yet, despite this, there was no language included in the proposed amendment vesting the Tax Court with similar authority to relax the tax payment requirement in direct appeals.

After S. 673 was introduced, it was referred to the Senate Judiciary Committee (SJC) on the same date (February 23, 1998). On June 4, 1998, the SJC reported favorably on the bill and it was subsequently passed by the full Senate on June 22, 1998. S. 673 was then forwarded to the Assembly Judiciary Committee (AJC) for review. On January 7, 1999, the AJC reported favorably on the bill but adopted an amendment to § 5 thereof to provide that if the county board of taxation refuses to relax the tax payment requirement and that decision is appealed, the Tax Court may hear all issues without remand to the county board of taxation as the interests of justice may require. As revised by the AJC, § 5 of S. 673 provided as follows (with the new language shown in underline):

> Notwithstanding the foregoing, the county board of taxation may relax the tax payment requirement and fix such terms for payment of the tax as the interests of justice may require. If the county board of taxation refuses to

21

> relax the tax payment requirement and that decision is appealed, the Tax Court may hear all issues without remand to the county board of taxation as the interests of justice may require.
>
> [Assembly Judiciary Comm. Statement to S. 673 (Jan. 7, 1999) (emphasis added).]

The bill (as revised) was thereafter passed by the full Assembly on June 10, 1999 and forwarded to the Senate for concurrence. On June 21, 1999, the full Senate concurred in the Assembly amendments and the bill was forwarded to the Governor. On September 17, 1999, S. 673 (as revised) was finally approved and executed by the Governor, thus becoming Chapter 208 of the Laws of 1999.

Importantly, the incorporation of the amendment into S. 673 acknowledged the Tax Court's existence but only vested it with authority to "hear all issues without remand to the county board of taxation as the interests of justice may require" in cases that were first initiated before the county board of taxation and then appealed to the Tax Court. This language appears to address the jurisdictional issue raised in Blum (see n.9 herein) to expand the scope of review by the Tax Court in an appeal that had been previously dismissed by the county tax board due to the taxpayer's failure to comply with N.J.S.A. 54:3-27. In that regard, the court would no longer be limited to reviewing only the appropriateness of the county board's dismissal, but could "hear all issues," presumably including the merits of the case, without remand to the county tax board "as the interests of justice may require."

22

This court recognizes that the additional language that was incorporated into N.J.S.A. 54:3-27 through the AJC amendments is odd as the additional language relates to appeals from a county board judgment, which are governed by N.J.S.A. 54:51A-1(b), rather than to appeals that are either filed with the county board of taxation or directly with the Tax Court, which are governed by that very statute (N.J.S.A. 54:3-27) itself. As such, this sentence appears to be out of context and/or redundant to the similar language that was incorporated into N.J.S.A. 54:51A-1(b) as part of the 1999 amendments. However, despite this oddity there is no verbiage contained in either of the two sentences that were incorporated into N.J.S.A. 54:3-27 under the 1999 amendments that vest the Tax Court with the ability to relax the tax payment requirement in a direct appeal.

Importantly, the Legislature did not modify the first sentence of § 5 of S. 673 to vest the Tax Court, in addition to the county board of taxation, with discretion to "relax the tax payment requirement and fix such terms for payment of the tax as the interests of justice may require" in direct appeals. If this revision had been intended, it could have been easily accomplished by simply adding the words "and the Tax Court" after the reference to "the county board of taxation" in the first sentence of § 5 of the bill. But the Legislature did not do so.

This court is reluctant to construe the inaction of the Legislature to include language in either the initial or the revised versions of § 5 of the bill to vest the Tax

23

Court with similar discretion in direct appeals as merely an erroneous oversight. The court makes this determination even though paragraph 6 in the Statements of both the SJC and the AJC during the legislative process summarizes the amendments undertaken in S. 673 as follows:

> 6. The bill would amend N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1[16] to provide for a uniform procedure with respect to the requirement for payment of taxes to maintain an appeal to the county board of taxation and the Tax Court for both regular assessments and added or omitted assessments; to provide that the county board of taxation and the Tax Court may relax the tax payment requirement and fix such terms of payment as the interests of justice may require, and to eliminate the provision in R.S. 54:51A-1(b) which excuses the taxpayer from paying interest on unpaid taxes from November 1 to the date of the filing of the complaint.
>
> [Senate Judiciary Comm. Statement to S. 673 (June 4, 1998); Assembly Judiciary Comm. Statement to S. 673 (emphasis added).]

Based upon a cursory reading of this summary, one could argue that the bill was intended to provide both the county board of taxation and the Tax Court with similar ability to relax the tax payment requirement in cases that are initiated before each entity. However, upon further review, one could also argue that the summary merely confirms that the Legislature did, in fact, act upon the Supreme Court

---

[16] The SJC Statement also included N.J.S.A. 54:4-66 as one of the statutes being amended in this respect; however, the AJC Statement removed the reference to N.J.S.A. 54:4-66.

24

Committee's recommendation from the 1996-1998 Biennial Report. To wit, the Legislature was moving forward at that time with a bill which would afford both the county tax boards and the Tax Court with the ability to relax the tax payment requirement as the "interests of justice" may require. The actual parameters of the Tax Court's ability to do so, however, were as specified in the proposed new statutory language.

In that regard, the new language crafted by the Legislature and incorporated into N.J.S.A. 54:3-27 created a very specific procedure for a taxpayer to seek relaxation of the tax payment requirement in the "interests of justice." The taxpayer must first appeal to the county board of taxation and then, if the board refuses to relax the requirement and that decision is appealed, the Tax Court may "hear all issues without remand to the county board of taxation as the interests of justice may require." N.J.S.A. 54:3-27. In view of the notable specificity of the procedure envisioned by the Legislature, in which the Tax Court itself is referenced, it is difficult to believe that the omission of language vesting the Tax Court with discretion to relax the tax payment requirement in direct appeals constituted an inadvertent omission or oversight.

This proposition is even more difficult to believe given that S. 673 was amended prior to its enactment, which afforded the Legislature an additional opportunity to review the language being added to N.J.S.A. 54:3-27 after the bill's

25

initial drafting and before its final approval. Despite that opportunity, however, no additional language was incorporated into § 5 of the bill.

The court acknowledges that the Biennial Reports of the Supreme Court Committee from 2002 through 2010 state that language conferring broader authority in the Tax Court under N.J.S.A. 54:3-27 was "inadvertently omitted" from the Committee's prior recommendations which were the basis for the 1999 amendments. In that regard, the Committee stated as follows:

> Proposed Amendment of N.J.S.A. 54:3-27 to Authorize Relaxing Tax Payment Requirement.
>
> The Committee believes that the Tax Court's power to relax the tax payment requirement as the interests of justice require should be specifically set forth in N.J.S.A. 54:3-27. It is a legislative recommendation, which was inadvertently omitted from comprehensive legislative recommendations previously made by the Committee and enacted into law in 1999 as chapter 208 of the laws of 1999. Specifically providing for the power to relax the tax payment requirement in N.J.S.A. 54:3-27 is consistent with the power added by the amendment of N.J.S.A. 54:51A-1 as part of that same 1999 comprehensive legislation. The text of the amendment follows and is indicated in bold text.
> . . . .
>
> Notwithstanding the foregoing, the county board of taxation **or the Tax Court in a matter before the court** may relax the tax payment requirement and fix such terms for payment of the tax as the interests of justice may require. If the county board of taxation refuses to relax the tax payment requirement and that decision is appealed, the Tax Court may hear all issues without remand to the

26

county board of taxation as the interests of justice may require.

[Biennial Rep. 2002-2004 at 24-25.] [17]

It is unclear to what degree the Legislature relies upon recommendations made by the Supreme Court Committee when enacting or revising legislation. However, it is the Legislature, and not the Committee, that ultimately makes the law. The Legislature did not vest the Tax Court with discretion to relax the tax payment requirement in the "interests of justice" in direct appeals when enacting the 1999 amendments to N.J.S.A. 54:3-27. Moreover, despite the repeated recommendations made by the Supreme Court Committee from 2002 through 2010 to revise the language of N.J.S.A. 54:3-27 to vest the Tax Court with such ability, the Legislature has never acted upon it. Accordingly, the language of N.J.S.A. 54:3-27 remains the same today as it did immediately following enaction of the 1999 amendments. And that was the last time the statute was revised. The court is reluctant to presume that the language articulated by the Legislature in the final version of the 1999 amendments, as well as the Legislature's failure to act on the Committee's repeated

---

[17] The Committee continued to suggest the proposed addition to N.J.S.A. 54:3-27 in its subsequent reports, by noting that "[t]his legislative amendment has been proposed in prior Biennial Reports of the Committee." See Biennial Rep. 2004-2006 at 23 (2006); Biennial Rep. 2006-2008 at 45 (2008); Biennial Rep. 2008-2010 at 23 (2010).

recommendations to revise that language since then, was anything but intentional.[18] In fact, the Legislature's failure to act evidences a legislative intent <u>not</u> to vest the Tax Court with such authority in direct appeals. See <u>Hunterdon Med. Ctr.</u>, 22 N.J. Tax at 338.

**C.** **<u>Plaintiffs' Argument Concerning The Final Paragraph of N.J.S.A. 54:3-27</u>**

In support of their position against dismissal, plaintiffs rely, among other things, on the wording of the final paragraph of N.J.S.A. 54:3-27. That paragraph reads as follows:

> <u>The payment of part or all of the taxes upon any property, due for the year for which an appeal from an assessment upon such property has been or shall hereafter be taken</u>, or of taxes for subsequent years, <u>shall in nowise prejudice the status of the appeal or the rights of the appellant to prosecute such appeal, before the county board of taxation, the Tax Court</u>, or in any court to which the judgment arising out of such appeal shall be taken, <u>except as may be provided for in R.S. 54:51A-1</u>.
>
> [N.J.S.A. 54:3-27 (emphasis added).]

Based upon this language, plaintiffs attempt to tie N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) together to their advantage, given that the former statute references the latter (but not specifically subsection "b" thereof) at its end with the clause that reads: "except as may be provided for in R.S. 54:51A-1." Plaintiffs claim the

---

[18] If this is not the case, then the court respectfully urges the Legislature to revise the statutory language accordingly so that its intention is clear.

28

presence of this clause at the end of N.J.S.A. 54:3-27 must be read to extend the relaxation authority that the Legislature expressly granted to the Tax Court in indirect appeals under N.J.S.A. 54:51A-1(b) to direct appeals under N.J.S.A. 54:3-27 as well.

The court is not persuaded by this argument.

To understand plaintiffs' position in this regard, a review of the entirety of N.J.S.A. 54:51A-1 is necessary. That statute reads as follows:

> **§ 54:51A-1. Review of judgment, action or determination of county board of taxation**
>
> Review of judgment, action or determination of county board of taxation.
>
> a.  Any party who is dissatisfied with the judgment, action or determination of the county board of taxation may seek review of that judgment, action or determination in the Tax Court by filing a complaint in the Tax Court, pursuant to the rules of court.
>
> b.  At the time that a complaint has been filed with the Tax Court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid. <u>Notwithstanding the foregoing, the Tax Court may relax the tax payment requirement and fix such terms of payments as the interests of justice may require</u>.
>
> c.  <u>If the Tax Court shall determine that the appeal to the county board of taxation has been (1) withdrawn at the hearing, or previously thereto in writing by the appellant or his agent; (2) dismissed because of appellant's failure to prosecute the appeal at a hearing called by the county</u>

29

tax board; (3) settled by mutual consent of the taxpayer and assessor of the taxing district, there shall be no review. This provision shall not preclude a review by the Tax Court in the event that the appeal was "dismissed without prejudice" by the county board of taxation.

[N.J.S.A. 54:51A-1 (emphasis added).]

The second sentence of paragraph "b" above was added under the 1999 amendments. In their argument, plaintiffs focus upon this new language to bolster their contention that the reference to "R.S. 54:51A-1" in the final paragraph of N.J.S.A. 54:3-27 provides similar authority for the Tax Court to relax the tax payment requirement in direct appeals. However, as previously noted, N.J.S.A. 54:51A-1 (which is the successor statute to N.J.S.A. 54:2-39) applies to indirect appeals only[19] and not to direct appeals filed with the Tax Court.

Moreover, the court notes that the final paragraph of N.J.S.A. 54:3-27 has been part of that statute since well before enaction of the 1999 amendments. In fact, a review of the legislative history of N.J.S.A. 54:3-27 reveals that the language of this (final) paragraph existed even prior to the 1975 amendments to that statute,

---

[19] The language of N.J.S.A. 54:51A-1 is based upon the verbiage of the statute it replaced (N.J.S.A. 54:2-39) and included the same tax payment requirement. Since N.J.S.A. 54:2-39 was enacted when the Tax Court did not exist and its predecessor Division of Tax Appeals had no jurisdiction to hear direct appeals, the Appellate Division in the Powder Mill I Assocs. case found no basis to conclude that the Legislature intended that statute to apply to direct appeals. 190 N.J. Super. at 68.

30

dating back to as early as 1938.[20]  At the time of the 1975 amendments, all appeals had to be filed with the county board of taxation and the appeal filing deadline was August 15 of the tax year.[21]  The language of the final paragraph of N.J.S.A. 54:3-27 as it existed in 1975 read as follows:

> The payment of part or all of the taxes upon any property, due for the year for which an appeal from an assessment upon such property has been or shall hereafter be taken, or of taxes for subsequent years, shall in nowise prejudice the status of the appeal or the rights of the appellant to prosecute such appeal, before the county board of taxation, the State Board of Tax Appeals, or in any court to which the judgment arising out of such appeal shall be taken.[22]

Importantly, the language of this paragraph was modified in 1977 to add a new clause at the end stating as follows: "except as may be provided for in section 2 of this act."  L. 1977, c. 357, § 1.  The reference to "section 2 of this act" referred to "R.S. 54:2-39," which was also revised as part of the same amendments.  Id. at §

---

[20]  The 1975 amendments were enacted per L. 1975, c. 361, § 1 (eff. Mar. 3, 1976). The amendments prior to that were enacted per L. 1938, c. 151.

[21]  Under the version of N.J.S.A. 54:3-27 then in effect, the taxpayer was required to pay "no less than 90% of the taxes assessed against him in the manner prescribed in R.S. 54:4-66" to maintain an appeal.  L. 1975, c. 361, § 1.  This provision was amended under the 1977 amendments to require that the taxpayer must pay "the first three quarters of the taxes assessed against him for the current tax year in the manner prescribed in R.S. 54:4-66" to maintain an appeal.  L. 1977, c. 357, § 1 (eff. Jan. 31, 1978).

[22]  This language was subsequently revised under the 1991 amendments to the statute to change the "State Board of Tax Appeals" to the "Tax Court."

31

2. In 1983, the Legislature repealed N.J.S.A. 54:2-39 and replaced it with N.J.S.A. 54:51A-1. L. 1983, c. 45, § 1 (eff. Jan. 28, 1983).

In 1977, when the above noted clause was inserted to the end of N.J.S.A. 54:3-27, there was no language in either statute (i.e., either N.J.S.A. 54:3-27 or N.J.S.A. 54:2-39) permitting relaxation of the tax payment requirement in the "interests of justice," as these provisions did not come into existence until the 1999 amendments were enacted. The following language, however, was part of N.J.S.A. 54:2-39 at that time:

> No appeal, however, shall lie to the Division of Tax Appeals in the Department of the Treasury where the appeal to the county board of taxation has been (a) withdrawn at the hearing, or previously thereto in writing by the appellant or his agent; (b) dismissed because of appellant's failure to prosecute the appeal at a hearing called by the county tax board; (c) settled by mutual consent of the taxpayer and assessor of the taxing district. This provision shall not preclude an appeal to the Division of Tax Appeals in the Department of the Treasury in the event that the appeal was "dismissed without prejudice" by the county board of taxation.
>
> [L. 1977, c. 357, § 2 (emphasis added).]

With this in mind, the court views the intent of the clause cited by plaintiffs at the end of the final paragraph of N.J.S.A. 54:3-27 (i.e., "except as may be provided for in R.S. 54:51A-1") to refer to circumstances where a taxpayer has withdrawn, failed to prosecute or settled their appeal, and not to relaxation of the tax payment requirement. Accordingly, the court views the entirety of the language of the final

32

paragraph of N.J.S.A. 54:3-27 to mean that the payment by a taxpayer of part or all of the taxes due on a property for the year of the appeal does not serve as an admission or concession as to the legitimacy of the assessment, and thus does not preclude the taxpayer's ability to file an appeal to challenge the validity of the assessment. That is, except in circumstances where the taxpayer has withdrawn, failed to prosecute or settled their appeal concerning the property, which would act as a bar to prevent further review of the case.

Here, it is noted that plaintiffs have not made payment of "part or all of the taxes" upon the property for the year of the appeal. In fact, as of the second return date of the within motion, plaintiffs had not made payment of <u>any</u> taxes relating to the 2025 tax year. But more importantly, considering the history of the statute, the court does not find merit in plaintiffs' interpretation of the final paragraph of N.J.S.A. 54:3-27; rather, the court interprets that paragraph as referenced above. The court therefore dismisses plaintiffs' argument in this regard.

### D. <u>Interpreting the Statute's Plain Language</u>

The language of N.J.S.A. 54:3-27, as revised under the 1999 amendments, is clear and unambiguous. "Statutory construction begins with the statute's plain language." <u>Sun Pipe Line</u>, 25 N.J. Tax at 472 (citing <u>Merin v. Maglaki</u>, 126 N.J. 430, 434 (1992)). "Where statutory language is plain, unambiguous and uncontrolled by another part of the act or other legislation, a court may not give it a

33

different meaning." Schneider, 196 N.J. Super. at 592 (citing Spiewak v. Rutherford Bd. of Ed., 90 N.J. 63, 74 (1982)); Route 88 Office Assoc., 13 N.J. Tax at 18. Under such circumstances, a court may not arbitrarily expand the scope of the statutory language, Galloway Twp. v. Petkevis, 2 N.J. Tax 85, 92-93 (Tax 1980), nor in the absence of any evidence of a contrary legislative intent may a court give the statutory words a different meaning. Spiewak, 90 N.J. at 74; Stewart v. Hamilton Twp., 7 N.J. Tax 368, 372-73 (Tax 1984). Moreover, and as cited earlier from Judge DeAlmeida in the Sun Pipe Line case, "[t]he statutes [N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1] plainly state the scope of available relief and it is incumbent on this court to apply that plain language." Sun Pipe Line, 25 N.J. Tax at 474.

The plain language of N.J.S.A. 54:3-27 does not vest the Tax Court with the ability to relax the tax payment requirement in the "interests of justice" in a direct appeal. Though the tax payment requirement prescribed under N.J.S.A. 54:3-27 applies both to appeals filed with the county tax boards and to direct appeals filed with the Tax Court, the "relaxation" language of that statute clearly and unambiguously relates solely to cases initiated at the former venue and to indirect appeals filed at the latter venue.

The Legislature could have drafted the "relaxation" provision in a neutral manner without specifically calling out either venue. To wit, the first sentence could have been drafted stating: "Notwithstanding the foregoing, the tax payment

34

requirement specified herein and the terms for payment of the tax may be relaxed as the interests of justice may require." If that had been the case, then the relaxation power would have automatically extended to both categories of cases (i.e., to appeals filed with the county tax boards and to direct appeals filed with the Tax Court), since both categories of cases are otherwise governed by this statute.

But the Legislature did not draft the language of the 1999 amendments in a neutral fashion; rather, the plain language refers only to the county board of taxation. Moreover, the plain language continues by stating that "[i]f the county board of taxation refuses to relax the tax payment requirement and that decision is appealed, the Tax Court may hear all issues without remand to the county board of taxation as the interests of justice may require." N.J.S.A. 54:3-27. The first clause of this sentence is a condition precedent to the latter. That is, the Tax Court's ability to consider relaxation in the "interests of justice" is only triggered in circumstances where the county board of taxation has refused to relax the tax payment requirement and that decision is appealed to the Tax Court. There is no language bestowing the Tax Court with the ability to relax the tax payment requirement in the "interests of justice" in direct appeals filed pursuant to N.J.S.A. 54:3-21.

The Tax Court is a creature of statute and is only imbued with such powers as are granted to it by the Legislature. The Legislature did not vest the Tax Court with

35

the ability to provide tax payment relief in a direct appeal, despite the many ample opportunities it had to do so.

### E. **Constitutional Validity**

Plaintiffs argue that if this court were to construe the law to deny the Tax Court the ability to relax the tax payment requirement in the "interests of justice" in a direct appeal, such interpretation would violate their rights to due process and/or equal protection of the laws. In response to this assertion, the court notes that prior case law has found that the differing tax payment requirements contained in N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) do not result in a due process or equal protection infringement. See Schneider, 196 N.J. Super. at 594-96; Dover-Chester Assocs., 419 N.J. Super. at 204 (stating that "[w]e remain satisfied that, even after the 1999 amendments, the Legislature acted within the broad range of its discretion in the field of taxation to prescribe different taxpayer requirements . . . .").

However, those cases dealt with the distinction between the tax payment obligations prescribed by the respective statutes. Here, the issue concerns the different "relaxation" provisions as contained in each statute. Notwithstanding, the court likewise determines that no constitutional infringement exists with respect to the court's opinion in this matter.

First, the court finds that no due process violation has occurred. "The critical components of due process are adequate notice, opportunity for a fair hearing and

availability of appropriate review." Schneider, 196 N.J. Super. at 595 (citing In re Suspension of Heller, 73 N.J. 292, 310 (1977)). The Tax Court has previously held that due process does not forbid compulsion to pay taxes prior to the opportunity to litigate the correctness of a tax. J.L. Muscarelle, Inc., 15 N.J. Tax at 167. Cf. Vermeulen, 44 N.J. at 501 (due process not violated by the docketing of a judgment for unpaid taxes due by a railroad under N.J.S.A. 54:29A-57 since the taxpayer could continue to pursue its right of appeal and thus has the opportunity to be heard).

As to the potential for relaxation of the tax payment requirement, plaintiffs chose the Tax Court as their initial forum of review by filing a direct appeal. They could have initiated their case before the county tax board, where they would have had the opportunity for a hearing. The ability to seek tax payment relief in the "interest of justice" in that forum is clear from the language of N.J.S.A. 54:3-27. If denied, their right to seek appropriate review from the Tax Court is also clear under both N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b). That avenue of relief was not foreclosed to them, and they were not forced to file a direct appeal. However, plaintiffs voluntarily chose to skip that opportunity and to appeal directly to the Tax Court, even though the plain language of N.J.S.A. 54:3-27 limits their right to pursue relaxation by proceeding in that manner. Plaintiffs' opportunity for adequate notice, the opportunity for a fair hearing and the availability of appropriate review in this

matter was not denied. Rather, any deprivation of rights was the result of plaintiffs' own choice.

Likewise, the court finds that no equal protection violation has occurred either. The constitution does not require that all persons must be treated identically, but rather that "similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same." Schneider, 196 N.J. Super. at 594 (quoting Levine v. Institutions & Agencies Dept. of N.J., 84 N.J. 234, 256 (1980)). Additionally, absent the creation of an inherently suspect classification, legislation "will be presumed valid, even if it has the effect of treating some differently than others, so long as it bears some rational relationship to a permissible state interest." Ibid.; See Parham v. Hughes, 441 U.S. 347, 351 (1979). Finally, it has been noted that "in classifying subjects for different treatment in the field of taxation, a Legislature possesses the greatest freedom in classification." Schneider, 196 N.J. Super. at 594 (citing Madden v. Kentucky, 309 U.S. 83, 88 (1940)).

Here, the court finds no inherently suspect classification, and also that it was within the Legislature's broad range of discretion to prescribe different requirements relative to relaxation of the tax payment requirement in the "interests of justice" between N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b). Although a litigant in a direct appeal has not had the opportunity for a prior adjudicatory hearing, that litigant

nevertheless has the right to satisfy the outstanding taxes and defeat the motion at any time prior to the hearing on the motion. That is not the case for a litigant in an indirect appeal. In the within matter, the second oral argument conducted on defendant's motion occurred more than one year after the due date for payment of the first quarter taxes for 2025. Plaintiffs thus had an entire year to make payment of the amount required under N.J.S.A. 54:3-27 to maintain their appeal and defeat defendant's motion but nevertheless failed to do so. Any additional taxes owed after the first quarter of 2025 would have been irrelevant to the motion to dismiss. During that time, defendant was denied the ability to utilize those funds for public purposes, and this burden was shifted to the other taxpayers in the district and reflected in the reserve for uncollected taxes.

By contrast, a litigant filing an indirect appeal is subject to the requirements of N.J.S.A. 54:51A-1(b), which does not allow an ability to cure the delinquency and defeat the motion. This distinction affords reasonable support for the difference in the Legislature's treatment of the relaxation provisions contained in N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b).

Another potential rational basis for the dichotomy may have been that the Legislature wished to encourage parties to pursue the tax relaxation remedy before the county board of taxation first. In this regard, an argument could be made that

the county tax board would likely be in a better position to assess the impact of a tax relaxation or waiver on a municipality within its jurisdiction than the Tax Court.

Finally, the same argument referenced above concerning due process likewise applies to plaintiffs' claim as to an equal protection infringement. Specifically, plaintiffs had the opportunity to initiate their case before the county board of taxation and they could have legitimately raised their "relaxation" argument at that venue under N.J.S.A. 54:3-27. They were not forced to file a direct appeal and subject themselves to the procedural limitations inherent with that choice. The forum was entirely their decision. As such, their claim that they have been treated unequally is unfounded.

### F. Plaintiffs' Voluntary Business Decisions

In General Trading Co. v. Dir., Div. of Taxation, 83 N.J. 122, 136 (1980), the Supreme Court stated that "a voluntary business decision 'is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred'" (quoting Comm'r v. Nat'l Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148 (1975)). And in Commissioner, the U.S. Supreme Court stated that:

> This court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not.
>
> [Id. at 149.]

40

As applicable to the within case, plaintiffs made voluntary business decisions to file a direct appeal and to stop paying taxes while their appeal was pending. The court has already addressed the legal ramifications associated with plaintiffs' decision to file a direct appeal. As to the payment of taxes, there is nothing in the record indicating that plaintiffs were financially unable to pay the taxes. The only reference to the financial impact of the assessment upon plaintiffs was in Mr. Zivkovic's certification, in which he stated that the tax increases had "drained" him and his wife, as well as their former tenant. However, any taxpayer could make the same argument and then use it as an excuse to stop paying taxes. The court cannot provide credence to such a vague assertion which could have far reaching impacts.

As indicated above, plaintiffs were afforded a significant amount of additional time to satisfy the relevant outstanding taxes (and consequently to defeat the within motion) over the course of an entire year prior to the second return date of the motion. Notwithstanding, plaintiffs failed to pay the relevant outstanding taxes by that date. Plaintiffs must therefore accept the legal consequences associated with that decision. As stated in prior cases, the collection of taxes that are needed to fund municipal operations "cannot . . . be permitted to rest with the unilateral business judgment of a taxpayer." J.L. Muscarelle, 14 N.J. Tax at 473 (Hamill, J.T.C., concurring) (quoting West Orange v. Block 107, 162 N.J. Super. 314, 317 (App. Div. 1978)).

41

### III.   Conclusion

For the reasons set forth above, the court concludes that there is no statutory authority for the Tax Court to relax the tax payment requirement under N.J.S.A. 54:3-27 in the "interests of justice" in a direct appeal that was not first initiated before the county board of taxation. Accordingly, the court cannot consider plaintiffs' request in this direct appeal.

Given that plaintiffs failed to pay the relevant outstanding taxes to Ridgefield by the second return date of defendant's motion, plaintiffs' appeal is hereby dismissed with prejudice pursuant to N.J.S.A. 54:3-27.[23]

---

[23] In view of the court's determination, it is unnecessary to address the second issue presented, which is that if the court had statutory authority to relax the tax payment requirement in the "interests of justice" under N.J.S.A. 54:3-27 in a direct appeal, whether the specific facts presented in this case warrant the provision of such relief. However, just so the record is complete, the court notes that this extraordinary relief is not merited based upon the facts as presented.

Precedent is uniform in holding that the discretion afforded to the Tax Court under N.J.S.A. 54:3-27 and N.J.S.A. 54:51A-1(b) is "limited," and therefore should be exercised "sparingly" and with considerable restraint, after reviewing all the facts and weighing all the evidence on a case-by-case basis, given the totality of the circumstances. See Christian Asset Mgmt. Corp., 19 N.J. Tax at 475; Wellington Belleville, 20 N.J. Tax at 336; Huwang, 21 N.J. Tax at 505.

The court is unpersuaded by plaintiffs' contention that because their trial-ready appraisal report evidences the property's over-assessment, they should not be required to pay the relevant outstanding taxes at issue here. An assertion of gross over assessment as a reason to relax the tax payment requirement in the "interests of justice" has previously been rejected by the Tax Court. See Christian Asset Mgmt. Corp., 19 N.J. Tax at 476; Sun Pipe Line, 25 N.J. Tax at 475 (stating that "[t]he requirement to pay the taxes on which the appeal is predicated has a rational basis . . . [t]his is true regardless of the apparent validity of the taxpayer's claimed

entitlement to a reduction in an assessment."). See also Route 88 Office Assoc. Ltd., 13 N.J. Tax at 21 (stating that "[t]he nonpayment of taxes has no relationship to the correct amount of a local property assessment and is itself irrelevant to the determination of the assessment" and that the tax payment requirement when an appeal is filed is "not because the payment or nonpayment of taxes has a bearing on the amount of the assessment but to insure that the flow of municipal revenues will not be interrupted by the filing of tax appeals").

An appraisal report is merely one appraiser's opinion of value. It is not a final determination. At this early point, plaintiffs' appraisal report has not yet been tested through testimony under oath or cross-examination, nor has it been accepted into evidence. It may be that if Ridgefield proceeds with its counterclaim, the court will be provided with another independent appraiser's value opinion that the property's assessment should be increased. And it may be that if plaintiffs were to prevail, they would be entitled to refund as a matter of law.

Plaintiffs are asking this court to interrupt the flow of tax revenue to the municipality, even though they have not yet proven their claims. This notion has been soundly rejected in the past. Sun Pipe Line, 25 N.J. Tax at 475. If every taxpayer who obtained an appraisal report were to stop paying their taxes based upon the findings of the report municipalities would end up in dire straits, suffering severe financial hardships and unable to provide services to taxpayers. Providing plaintiffs relief from paying taxes could encourage other taxpayers to delay making their own tax payments while they pursue appeals. This, in turn, would have devastating effects on New Jersey municipalities, which would be unable to operate. Moreover, the remaining taxpayers in the district would be severely prejudiced, as they would be forced to shoulder an unnecessary financial burden. Any alleged harm to plaintiffs in paying their taxes is certainly outweighed by the potential harm to the municipality and the other taxpayers in the district. This court is not going to open those floodgates.

Courts have held that a property's inability to earn income due to economic or other external conditions is generally not a reason to allow the nonpayment of outstanding taxes. See Wellington Belleville, 20 N.J. Tax at 333, 337; Branchburg Hosp., 32 N.J. Tax at 557, 560. Cf. Huwang, 21 N.J. Tax at 510-11 (relaxation merited because plaintiffs, who had filed for bankruptcy, were paying the back taxes under a bankruptcy plan of reorganization).

Here, plaintiffs have not attributed the inability to pay the outstanding taxes to bankruptcy, insolvency, foreclosure, receivership or similar circumstances. They have not provided any indication that they are foreclosed from obtaining funds from sources other than the rental income from the property. Therefore, their bare

43

An Order will be entered in accordance with this opinion.

---

contention that the lack of tenants has led to their inability to pay the outstanding taxes on the property is unpersuasive.

In sum, if the court were vested with the statutory ability to provide the relief requested, the facts as presented would not merit granting the extraordinary relief requested by plaintiffs.